IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,

                 Plaintiff,

SOUTH CAROLINA
DEPARTMENT OF HEALTH AND              Civil No. 5:11-cv-00991-JMC
ENVIRONMENTAL CONTROL,

           Plaintiff-Intervenor,

      v.

ALBEMARLE CORPORATION,

              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**<u>CONSENT DECREE</u>**

## TABLE OF CONTENTS

I.      JURISDICTION AND VENUE .......................................................................................... 3
II.     APPLICABILITY ............................................................................................................. 4
III.    DEFINITIONS .................................................................................................................. 4
IV.     CIVIL PENALTY ............................................................................................................ 5
V.      COMPLIANCE REQUIREMENTS ................................................................................ 6
VI.     REPORTING REQUIREMENTS .................................................................................... 9
VII.    STIPULATED PENALTIES .......................................................................................... 10
VIII.   FORCE MAJEURE ........................................................................................................ 12
IX.     DISPUTE RESOLUTION .............................................................................................. 13
X.      INFORMATION COLLECTION AND RETENTION ................................................. 14
XI.     EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ..................................... 15
XII.    COSTS ............................................................................................................................ 17
XIII.   NOTICES ........................................................................................................................ 17
XIV.    EFFECTIVE DATE ........................................................................................................ 18
XV.     RETENTION OF JURISDICTION ............................................................................... 18
XVI.    MODIFICATION ............................................................................................................ 19
XVII.   TERMINATION ............................................................................................................. 19
XVIII.  PUBLIC PARTICIPATION ........................................................................................... 19
XIX.    SIGNATORIES/SERVICE ............................................................................................ 19
XX.     FINAL JUDGMENT ...................................................................................................... 20
XXI.    HEADINGS ..................................................................................................................... 20

## INTRODUCTION

A.     Plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), and Plaintiff South Carolina Department of Health and Environmental Control ("the Department") filed an amended complaint in this action on May 5, 2011, alleging that Defendant, Albemarle Corporation ("Albemarle" or "Defendant"), violated various provisions of the Clean Air Act (the "Act"), 42 U.S.C. §§ 7401 to 7671q, regulations promulgated thereunder, the South Carolina Pollution Control Act, § 48-1-10 et seq. and regulations promulgated thereunder, and permits issued to it by the Department at its facility located in Orangeburg, South Carolina.

B.     The Complaint against Defendant alleges violations of (1) federal emissions standards for hazardous air pollutants for pharmaceutical production promulgated by EPA pursuant to Section 112 of the Act and set forth at 40 C.F.R. Part 63, Subparts A and GGG (the "Pharma MACT"); (2) the South Carolina Pollution Control Act and S.C. Code Ann. Regs 61-62.60, 62.61, 62.63, and 62.70 promulgated by the State of South Carolina incorporating, *inter alia,* by reference National Emissions Standards and the Pharma MACT; (3) federal new source performance standards ("NSPS") for Equipment Leaks of Volatile Organic Compounds in the Synthetic Organic Chemicals Manufacturing Industry, promulgated by EPA pursuant to Section 111 of the Act and set forth at 40 C.F.R. Part 60, Subparts A and VV; (4) Standards for Protection of Stratospheric Ozone, Recycling and Emission Reduction set forth at 40 C.F.R. Part 82, Subpart F; and (5) permits issued to Albemarle by the Department pursuant to the South Carolina State Implementation Plan and Title V of the Act requiring compliance with the Pharma MACT.  At the request of the United States and the Department, on July 18, 2013, the Court dismissed Claims 3, 14, 17, 19, 31, 32, 34, 36 and 37 with prejudice; and nothing in this Consent Decree alters or affects the legal effect of that Order.

C.     Defendant does not admit any liability to the United States or the Department arising out of the transactions or occurrences alleged in the Complaint.

D.     The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid further litigation among the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I.     JURISDICTION AND VENUE

1.     This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 113 (b) of the Act, 42 U.S.C. § 7413(b), and over the Parties.  The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the claims asserted by the Department. Venue lies in this District pursuant to 42 U.S.C. § 7413(b) and 28 U.S.C. §§ 1391(b) and (c) and 1395(a), because the violations alleged in the Complaint are alleged to have occurred in, and Defendant conducts business in, this judicial district.  For purposes of this Decree, or any action to enforce this Decree, Defendant consents to the Court's jurisdiction over this Decree and any such action and over Defendant and consents to venue in this judicial district.

2.      For purposes of this Consent Decree, Defendant agrees that the Complaint states claims upon which relief may be granted.

## II.    APPLICABILITY

3.      The obligations of this Consent Decree apply to and are binding upon the United States, and the Department and upon Defendant and any successors, assigns, or other entities or persons otherwise bound by law.

4.      No transfer of ownership or operation of the Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendant of its obligation to ensure that the terms of the Decree are implemented.  At least 30 Days prior to such transfer, Defendant shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA Region 4, the United States Attorney for the District of South Carolina, the United States Department of Justice and the Department, in accordance with Section XIII (Notices). Any attempt to transfer ownership or operation of the Facility without complying with this Paragraph constitutes a violation of this Decree.

5.      Defendant shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor retained to perform work required under this Consent Decree.  Defendant shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

6.      In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## III.    DEFINITIONS

7.      Terms used in this Consent decree that are defined in the Act or in regulations promulgated pursuant to the Act shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Decree.  Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

"Complaint" shall mean the amended complaint filed by the United States and the Department in this action on May 5, 2011 [ECF No. 7];

"Consent Decree" or "Decree" shall mean this Decree and all appendices attached hereto;

"Day" shall mean a calendar day unless expressly stated to be a business day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal or state holiday, the period shall run until the close of business of the next business day;

"Defendant" shall mean Albemarle Corporation and its successors and assigns;

"The Department" shall mean the South Carolina Department of Health and Environmental Control;

"EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies;

"Effective Date" shall have the definition provided in Section XIV.

"Facility" shall mean Defendant's Orangeburg South Carolina facility located at 725 Canon Bridge Road.

"Paragraph" shall mean a portion of this Decree identified by an arabic numeral;

"Parties" shall mean the United States, the Department and Defendant;

"Section" shall mean a portion of this Decree identified by a roman numeral;

"United States" shall mean the United States of America, acting on behalf of EPA.

## IV.    CIVIL PENALTY

The United States and the Department are entitled to a civil penalty in the amount of $444,257.88, $331,995.50 to the United States and $112,262.38 to the Department. The Parties agree that the penalty shall be paid as described in this Section V (Compliance Requirements).

8.    Within 30 Days after the Effective Date, Defendant shall pay to the United States the sum of $331,995.50 as a civil penalty, together with interest accruing from the date on which the Consent Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961 as of the date of lodging.

9.    Defendant shall pay the civil penalty due at https://www.pay.gov to the U.S. Department of Justice account, in accordance with instructions provided to Defendant by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the District of South Carolina after the Effective Date. The payment instructions provided by the FLU shall include a Consolidated Debt Collection System ("CDCS") number, which Defendant shall use to identify all payments required to be made in accordance with this Consent Decree. The FLU will provide the payment instructions to:

Karen G. Narwold
Albemarle Corporation
Senior Vice President, General Counsel, Corporate & Government Affairs
451 Florida Street
Baton Rouge, LA 70801
Office: 225.388.7716
Karen.Narwold@albemarle.com

5

on behalf of Defendant. Defendant may change the individual to receive payment instructions on their behalf by providing written notice of such change to the United States and EPA in accordance with Section XIII (Notices). At the time of payment, Defendant shall send notice that payment has been made: (i) to EPA via email at acctsreceivable.cinwd@epa.gov or via regular mail at EPA Cincinnati Finance Office, 26 Martin Luther King Drive, Cincinnati, Ohio 45268; (ii) to the United States via email or regular mail in accordance with Section XIII; and (iii) to EPA in accordance with Section XIII. Such notice shall reference the CDCS Number and DOJ case number 90-5-2-1-2152/1.

10.     Defendant shall not deduct any penalties paid under this Decree pursuant to this Section or Section VII (Stipulated Penalties) in calculating its federal income tax.

11.     Albemarle does hereby voluntarily withdraw with prejudice its Motion for Sanctions [ECF Nos. 60 and 73], and its Petition for Attorney's Fees and Costs [ECF Nos. 166 and 178] in the amount of $112,262.38, and the Court hereby rescinds its Order and Opinion of November 4, 2013 [ECF No. 160] entitling Albemarle to fees and costs based on said petition. The Department agrees that Albemarle's liability for the civil penalty owing to the Department under this Decree in the amount of $112,262.38 shall be deemed satisfied upon the final execution of this Decree by the Parties and approval by the Court.

## V.     COMPLIANCE REQUIREMENTS

12.     Within 30 Days of the Effective Date, Defendant shall submit a complete amended Pharma MACT Notification of Compliance Status Report ("NOCSR") as to the Ibuprofen (including HCN and acetyl chloride), DIP, and IBB processes, which includes the following:

a.      The results and supporting documentation of any applicability determinations, emissions calculations, or analyses used to identify and quantify HAP emissions from the affected source, as defined by 40 C.F.R. § 63.1250(a);

b.      The methods that will be used for determining continuing compliance with detailed specificity including the option chosen where regulatory options exist and detailed descriptions and discussions of how Albemarle will meet all equipment leak detection and repair requirements, monitoring requirements, testing requirements, reporting and recordkeeping requirements, control device requirements, and compliance demonstration requirements, 40 C.F.R. § 63.9(h)(2)(i)(A) and 40 C.F.R. § 63.9(h)(2)(i)(C);

c.      The results of emissions profiles, performance tests, engineering analyses, design evaluations or calculations used to demonstrate compliance. For performance tests, results should include descriptions of sampling and analysis procedures and quality assurance procedures, including a diagram identifying sampling locations, 40 C.F.R. § 63.1260(f)(2);

d.      Descriptions of monitoring devices, monitoring frequencies, and the values of monitored parameters established during the initial compliance determinations, including data and calculations to support the levels established, 40 C.F.R. § 63.1260(f)(3);

e.      Listing of all operating scenarios for each process unit, including emissions calculations and engineering analyses as defined in 40 C.F.R. § 63.1251 and 40 C.F.R. § 63.1260(f)(4);

f.      Descriptions of worst-case operating and/or testing conditions for control devices, 40 C.F.R. § 63.1260(f)(5);

g.      Identification of emission points subject to overlapping requirements and the authority under which the defendant will comply, 40 C.F.R. § 63.1260(f)(6);

h.      Anticipated periods of planned routine maintenance of centralized combustion control devices (CCCD) subject to 40 C.F.R. § 63.1252(h) during the period between the compliance date and the end of the period covered by the first Periodic report, and if applicable, the rationale for why the planned routine maintenance must be performed while a process with a vent subject to 40 C.F.R. § 63.1254(a)(3) will be operating, 40 C.F.R. § 63.1260(f)(7);

i.      The methods that were used to determine compliance, 40 C.F.R. § 63.9(h)(2)(i)(A);

j.      The results of any performance tests, opacity or visible emission observations, continuous monitoring system performance evaluations, and/or other monitoring procedures or methods that were conducted, 40 C.F.R. § 63.9(h)(2)(i)(B);

k.      The methods that will be used for determining continuing compliance, including a description of monitoring and reporting requirements and test methods, 40 C.F.R. § 63.9(h)(2)(i)(C);

l.      The type and quantity of hazardous air pollutants emitted by the source (or surrogate pollutants if specified in the relevant standard), reported in units and averaging times and in accordance with the test methods specified in the relevant standard, 40 C.F.R. § 63.9(h)(2)(i)(D);

m.      If the relevant standard applies to both major and area sources, an analysis demonstrating whether the affected source is a major source (using the emissions data generated for this NOCSR), 40 C.F.R. § 63.9(h)(2)(i)(E);

n.      A description of the air pollution control equipment (or method) for each emission point including each control device (or method) for each hazardous air pollutant and the control efficiency (percent) for each control device (or method), 40 C.F.R. § 63.9(h)(2)(i)(F);

o.      A statement by defendant as to whether it has complied with the relevant standard or other requirements, 40 C.F.R. § 63.(h)(2)(i)(G);

7

p.     A leak detection and repair NOCSR per 40 C.F.R. § 63.1255(h)(2), and also include information pertaining to how EPA Method 21 is properly followed (40 C.F.R. § 63.1255(b)(1) and 40 C.F.R. § 63.180(b)(1)), and an accounting of components in vacuum service (40 C.F.R. § 63.1255(h)(2)(i)(B));

q.     Information regarding the heat exchange systems present at Albemarle as of the effective date of this Consent Decree, including but not limited to, a detailed description of each heat exchanger system and whether they are once through or re-circulating, the basis for and a discussion of the regulatory option chosen to define a leak, and a detailed discussion of the procedures that will be used to repair a leak, 40 C.F.R. § 63.1252(c)(1), 40 C.F.R. § 63.104), 40 C.F.R. § 104(b)(6), 40 C.F.R. §104(d)(1), and 40 C.F.R. § 104(d)(2); and

r.     Each closed-vent system in place at the facility as of the effective date of this Consent Decree, including a description and identification number of each closed-vent system, the location of each closed-vent system, a list of components within each closed-vent system that are subject to 40 C.F.R. § 63.172(g) and 40 C.F.R. § 63.172(f) , the inspection procedures, and corresponding recordkeeping (40 C.F.R. § 63.1255(g)(7), 40 C.F.R. § 63.1258(h), 40 C.F.R. § 63.1255(b), 40 C.F.R. § 63.162(c), 40 C.F.R. § 63.172, and 40 C.F.R. § 63.9(h)(2)(i)(C)).

EPA and the Department shall review and approve the NOCSR per the procedures in paragraph 15.

12.1.     Albermarle shall not produce any pharmaceutical product or pharmaceutical isolated intermediate unless such process is included in the Notification of Compliance Status Report required by paragraph 12 of this Consent Decree and by 40 C.F.R. §63.1260(f).  Prior to the termination of this Consent Decree, the initiation of production of any other pharmaceutical product or pharmaceutical isolated intermediate will require compliance with paragraph 12 of this Consent Decree.  Following termination of this Consent Decree, Albemarle must comply with the provisions of 40 C.F.R. § 1260(g) and (h) to accommodate the introduction of any new pharmaceutical products or pharmaceutical isolated intermediate at the site.

13.     Within 30 days of the Effective Date, Albemarle shall identify to EPA the procedures it has in place or intends to implement to ensure that the follow-up verification tests for any chiller leaks of a Class I or II refrigerant are completed, and shall submit to EPA and the Department the leak rate calculations for the past 12 months for each chiller and a description of the methodology used to calculate the leak rates per 40 C.F.R. § 82.152.  EPA and the Department shall review and approve the procedures per the procedures in paragraph 15.

14.     Within 30 days of the Effective Date, Albemarle shall submit to EPA and the Department a complete copy of the test reports and supporting data of the periodic pressure testing, per 40 C.F.R. §§ 63.178 and 63.1255(b)(1)(ix), for the HCN process for  2013.  Defendant may submit the information called for in this paragraph with the materials submitted to comply with paragraph 12(b), above.

15.    <u>Approval of Deliverables</u>.  Defendant shall submit any plan, report, or other item that it is required to submit for approval pursuant to this Consent Decree to EPA.  EPA, after consultation with the Department, may approve the submission or decline to approve it and provide written comments.  Within 45 Days of receiving EPA's written comments, Defendant shall either: (i) alter the submission consistent with EPA's written comments and provide the submission to EPA for final approval, or (ii) submit the matter for dispute resolution under Section IX (Dispute Resolution) of this Decree.  Upon receipt of EPA's final approval of the submission, or upon completion of the submission pursuant to dispute resolution, Defendant shall implement the submission in accordance with the schedule in the approved submission.

16.    Any stipulated penalties applicable to the original submission, as provided in Section VII (Stipulated Penalties), shall accrue during the 45 day period or other specified period, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of Defendant's obligations under this Decree, the stipulated penalties applicable to the original submission shall be due and payable, in accordance with paragraph 27, notwithstanding any subsequent resubmission.

17.    <u>Permits</u>.  Where any compliance obligation under this Section requires Defendant to obtain a federal, state, or local permit or approval, Defendant shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.  Defendant may seek relief under the provisions of Section VIII (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Defendant has submitted timely and complete applications and has taken all other actions necessary to obtain all such permits or approvals.

## VI.    REPORTING REQUIREMENTS

18.    Whenever any violation of this Consent Decree or any other event affecting Defendant's performance under this Decree, or the performance of its Facility, may pose an immediate threat to the public health or welfare or the environment, Defendant shall notify EPA and the Department orally or by electronic or facsimile transmission as soon as possible, but no later than 24 hours after Defendant first knew of the violation or event.  All reports shall be submitted to the persons designated in Section XIII (Notices).

19.    Each report submitted by Defendant under Section VI shall be signed by an official of the submitting party and include the following certification:

I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete.  I am aware that there are significant penalties for

submitting false information, including the possibility of fine and imprisonment for knowing violations.

20.     This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

21.     The reporting requirements of this Consent Decree do not relieve Defendant of any reporting obligations required by the Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

22.     Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## VII.    STIPULATED PENALTIES

23.     Defendant shall be liable for stipulated penalties to the United States and the Department for violations of this Consent Decree as specified below, unless excused under Section VIII (Force Majeure).  A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

24.     Late Payment of Civil Penalty.  If Defendant fails to pay the civil penalty required to be paid under Section IV (Civil Penalty) when due, Defendant shall pay a stipulated penalty of $5000 per Day for each Day that the payment is late.

25.     Compliance Obligations.  For each day Defendant fails to comply with the requirements of paragraphs 12 to14:

| Penalty Per Violation Per day | Period of Noncompliance |
|---|---|
| $1000 | 1st through 14th day |
| $2000 | 15th through 30th day |
| $3000 | 31st day and beyond |

26.     Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

27.     The United States or the Department, or both, may seek stipulated penalties under this Section by sending a joint written demand to Defendant, or by either sovereign sending a written demand to the Defendant, with a copy simultaneously sent to the other Plaintiff.  Either sovereign may waive stipulated penalties or reduce the amount of stipulated penalties it seeks, in the unreviewable exercise of its discretion and in accordance with this Paragraph.  Where both sovereigns seek stipulated penalties for the same violation of this Consent Decree, Defendant shall

pay 50% percent to the United States and 50% percent to the State. Where only one sovereign demands stipulated penalties for a violation, and the other sovereign does not join in the demand, Defendant shall pay the full stipulated penalties due for the violation to the sovereign(s) making the demand within 30 Days of a written demand.

28.    Stipulated penalties shall continue to accrue as provided in Paragraph 26, during any Dispute Resolution, but need not be paid until the following:

      a.    If the dispute is resolved by agreement or by a decision of EPA or the Department that is not appealed to the Court, Defendant shall pay accrued penalties determined to be owing, together with interest, to the United States or the Department within 30 Days of the effective date of the agreement or the receipt of EPA's or the Department's decision or order;

      b.    If the dispute is appealed to the Court and the United States or the Department prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 Days of receiving the Court's decision or order, except as provided in subparagraph c, below;

      c.    If any Party appeals the District Court's decision, Defendant shall pay all accrued penalties determined to be owing, together with interest, within 15 Days of receiving the final appellate court decision.

29.    Defendant shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraph 9, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid. Defendant shall pay stipulated penalties owing to the Department by check payable to SCDHEC and sent to: Randy Stewart SCDHEC, Bureau of Air Quality, 2600 Bull Street, Columbia, SC, 29201.

30.    If Defendant fails to pay stipulated penalties according to the terms of this Consent Decree, Defendant shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States or the Department from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

31.    Subject to the provisions of Section XI (Effect of Settlement/Reservation of Rights), the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for Defendant's violation of this Consent Decree or applicable law. Where a violation of this Consent Decree is also a violation of the Clean Air Act, Defendant shall be allowed a credit, for any stipulated penalties paid, against any statutory penalties imposed for such violation.

## VIII.   FORCE MAJEURE

32.    "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of Defendant's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation.  The requirement that Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible.  "Force Majeure" does not include Defendant's financial inability to perform any obligation under this Consent Decree.

33.    If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Defendant shall provide notice orally or by electronic or facsimile transmission to the individuals listed in Section XIII (Notices) below, within 72 hours of when Defendant first knew that the event might cause a delay. Within seven days thereafter, Defendant shall provide in writing to EPA and the Department an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendant's rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendant, such event may cause or contribute to an endangerment to public health, welfare or the environment.  Defendant shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure.  Failure to comply with the above requirements shall preclude Defendant from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure.  Defendant shall be deemed to know of any circumstance of which Defendant, any entity controlled by Defendant, or Defendant's contractors knew or should have known.

34.    If EPA, after a reasonable opportunity for review and comment by the Department, agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA, after a reasonable opportunity for review and comment by the Department, for such time as is necessary to complete those obligations.  An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation.  EPA will notify Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

35.    If EPA, after a reasonable opportunity for review and comment by the Department, does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Defendant in writing of its decision.

36.    If Defendant elects to invoke the dispute resolution procedures set forth in Section IX (Dispute Resolution), it shall do so no later than 15 days after receipt of EPA's notice.  In any such

proceeding, Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the requirements of Paragraphs 32 and 33. If Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Defendant of the affected obligation of this Consent Decree identified to EPA and the Court.

## IX.    DISPUTE RESOLUTION

37.    Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. Defendant's failure to seek resolution of a dispute under this Section shall preclude Defendant from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendant arising under this Decree.

38.    Informal Dispute Resolution. Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when Defendant sends the United States a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed 20 Days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 30 Days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

39.    Formal Dispute Resolution. Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant.

40.    The United States shall serve its Statement of Position within 45 Days of receipt of Defendant's Statement of Position. The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. The United States' Statement of Position shall be binding on Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

41.    Defendant may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XIII (Notices), a motion requesting judicial resolution of the dispute. The motion must be filed within ten Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph. The motion shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

13

42. The United States shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court. Defendant may file a reply memorandum, to the extent permitted by the Local Rules.

43. Standard of Review

a. <u>Disputes Concerning Matters Accorded Record Review</u>. Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 39 pertaining to the adequacy or appropriateness of plans or reports, procedures to implement plans, schedules or any other items requiring approval by EPA under this Consent Decree; the adequacy of the performance of work undertaken pursuant to this Consent Decree; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, Defendant shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

b. <u>Other Disputes</u>. Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 39, Defendant shall bear the burden of demonstrating that its position complies with this Consent Decree.

44. The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 28. If Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VII (Stipulated Penalties).

## X.   INFORMATION COLLECTION AND RETENTION

45. The United States, the Department and their representatives, including attorneys, contractors, and consultants, shall have the right of entry into any facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

a. monitor the progress of activities required under this Consent Decree;

b. verify any data or information submitted to the United States or the Department in accordance with the terms of this Consent Decree;

c. obtain samples and, upon request, splits of any samples taken by Defendant or its representatives, contractors, or consultants;

d. obtain documentary evidence, including photographs and similar data; and

e. assess Defendant's compliance with this Consent Decree.

14

46.     Upon request, Defendant shall provide EPA and the Department or their authorized representatives splits of any samples taken by Defendant. Upon request, EPA and the Department shall provide Defendant splits of any samples taken by EPA or the Department.

47.     Until five years after the termination of this Consent Decree, Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Defendant's performance of its obligations under this Consent Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States or the Department, Defendant shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

48.     At the conclusion of the information-retention period provided in the preceding Paragraph, Defendant shall notify the United States and the Department at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States or the Department, Defendant shall deliver any such documents, records, or other information to EPA or the Department. Defendant may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law. If Defendant asserts such a privilege, it shall provide the following: (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by Defendant. However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

49.     Defendant may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

50.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or the Department pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XI.    EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

51.     This Consent Decree resolves the civil claims of the United States and the Department for the violations alleged in the Complaint filed in this action through the date of lodging; provided that on July 8, 2013, the Court dismissed claims 3, 14, 17, 19, 31, 32, 34, 36 and

37 with prejudice [ECF No. 90] and nothing in this Consent Decree alters or affects the legal effect of that Order.

52.     The United States and the Department reserve all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in Paragraph 51.  This Consent Decree shall not be construed to limit the rights of the United States or the Department to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal or state laws, regulations, or permit conditions, whether related to the violations addressed in this Consent Decree or otherwise, except as expressly specified in Paragraph 51.  The United States and the Department further reserve all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, Defendant's Facility, whether related to the violations addressed in this Consent Decree or otherwise.

53.      In any subsequent administrative or judicial proceeding initiated by the United States or the Department for injunctive relief, civil penalties, other appropriate relief relating to the Facility or Defendant's violations, Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the Department in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 51.  Nothing herein will affect the dismissal of claims 3, 14, 17, 19, 31, 32, 34, 36 and 37 that were dismissed with prejudice.

54.     This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations.  Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein.  The United States and the Department do not, by their consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of the Act, 42U.S.C. § 7401, et seq., or with any other provisions of federal, State, or local laws, regulations, or permits.

55.     This Consent Decree does not limit or affect the rights of Defendant or of the United States or the Department against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise provided by law.

56.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XII.    COSTS

The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States and  the Departmentshall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendant.

## XIII.    NOTICES

57.    Unless otherwise specified in this Decree, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

As to the United States by email:    eescasemanagement.enrd@usdoj.gov
Re: DJ # 90-5-2-1-2152/1

As to the United States by mail:    EES Case Management Unit
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
Re: DJ # 90-5-2-1-2152/1

As to EPA:    Mr. Denis Kler
Air, Pesticides and Toxics Management Division
U.S. EPA, Region 4
61 Forsyth Street, S.W.
Atlanta, GA  30303
Kler.denis@epa.gov

Suzanne G. Rubini, Chief
Office of Air, Pesticides, Toxics Legal Support
Office of Environmental Accountability
 U.S. EPA, Region 4
61 Forsyth Street, S.W.
Atlanta, GA  30303
Rubini.suzanne@epa.gov

As to the Department:    S.C. Dept. of Health and Environmental Control
Office of General Counsel
Chief Counsel for EQC
2600 Bull St.
Columbia, SC 29201
dickmajs@dhec.sc.gov and robertnl@dhec.sc.gov

17

|                   |                                         |
|-------------------|-----------------------------------------|
| With copy to:     | Bureau of Air Quality                   |
|                   | Manager, Enforcement Section            |
|                   | 2600 Bull St.                           |
|                   | Columbia, SC 29201                      |
|                   |                                         |
| As to Defendant:  | Matt Lynch                              |
|                   | Corporate Environmental Director        |
|                   | Albemarle Corporation                   |
|                   | 451 Florida Blvd.                       |
|                   | Baton Rouge, LA 70801                   |
|                   | matt.lynch@albemarle.com                |
|                   |                                         |
| With a copy to:   | Charles R. Nestrud                      |
|                   | Chisenhall, Nestrud & Julian, P.A.      |
|                   | 400 West Capitol                        |
|                   | Suite 2840                              |
|                   | Little Rock, AR 72201                   |
|                   | cnestrud@cnjlaw.com                     |

58.     Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

59.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XIV.   EFFECTIVE DATE

60.     The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XV.   RETENTION OF JURISDICTION

61.     The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections IX (Dispute Resolution) and XVI (Modification), or effectuating or enforcing compliance with the terms of this Decree.  Notwithstanding any other provision herein, nothing in this Consent Decree shall limit the Department in any way from pursuing administrative enforcement or compliance requirements not related to this Consent Decree by administrative order or other administrative process, or to seek to obtain penalties or injunctive relief under the Act or implementing regulations and analogous State law provisions, or under federal or state laws, regulations, or permit conditions.

## XVI.  MODIFICATION

62.    The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

63.    Any disputes concerning modification of this Decree shall be resolved pursuant to Section IX (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 43, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVII.  TERMINATION

64.    Defendant may serve upon the United States and the Department a Request for Termination, stating that Defendant has satisfactorily completed performance of its compliance obligations required by this Consent Decree, including the Compliance obligations under Section V, payment of the civil penalty under Section IV and any outstanding stipulated penalties under Section VII, together with all necessary supporting documentation.  The parties shall confer informally concerning the Request for Termination and any disagreement that the Parties may have as to whether Defendant has satisfactorily complied with the requirements for termination.  If the United States, after consultation with the Department, agrees that the Consent Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation reciting that the requirements of the Consent Decree have been met and requesting termination of the Consent Decree.  If the United States, after consultation with the Department, does not agree that the Consent Decree may be terminated, Defendant may invoke Dispute Resolution under Section IX of this Consent Decree.  However, Defendant shall not seek Dispute Resolution of any dispute regarding termination, under Paragraph 39 of Section IX, until 28 days after service of its Request for Termination.

## XVIII. PUBLIC PARTICIPATION

65.    This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.  Defendant consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Decree.

## XIX.  SIGNATORIES/SERVICE

66.    Each undersigned representative of Defendant, the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice, and the Deputy Director, Environmental Quality Control of the Department, certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

67.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

68.     This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  No other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XX.    FINAL JUDGMENT

69.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States, the Department and Defendant.

## XXI.    HEADINGS

70.     Headings to the sections and subsections of this Consent Decree are provided for convenience and do not affect the meaning or interpretation of the provisions of this Consent Decree.

Dated and entered this 14th day of August, 2014

*J. Michelle Childs*

United States District Judge

Columbia, South Carolina

20

FOR THE UNITED STATES OF AMERICA:

Date: 6/9/14

ELLEN M. MAHAN
Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice

Date: 6/12/14

LORI JONAS
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Washington, DC  20044-7611


WILLIAM N. NETTLES
United States Attorney
District of South Carolina

Date: 6/12/14

JAMES C. LEVENTIS (#9406)
BARBARA M. BOWENS (#4004)
Assistant United States Attorneys
District of South Carolina
1441 Main Street, Suite 500
Columbia, SC 29201
(803) 929-3000

21

FOR THE U.S. ENVIRONMENTAL PROTECTION
AGENCY:

Date: 6/18/14

MARY J. WILKES
Regional Counsel
U.S. Environmental Protection Agency, Region 4

Date: 6/16/14

ELLEN ROUCH
Associate Regional Counsel
U.S. Environmental Protection Agency, Region 4
Office of Regional Counsel
61 Forsyth Street, S.W.
Atlanta, Georgia 30303

22

FOR THE SOUTH CAROLINA DEPARTMENT OF
HEALTH AND ENVIRONMENTAL CONTROL

Date: 6/6/2014

ELIZABETH A. DIECK
Director of Environmental Affairs
South Carolina Department of Health and Environmental
Control

Date: 6/6/2014

JACQUELYN S. DICKMAN
Chief Deputy General Counsel
SCDHEC Office of General Counsel
2600 Bull Street
Columbia, SC 29201
ATTORNEY FOR SCDHEC

Date: 6/6/2014

NANCY L. ROBERTS
SCDHEC Office of General Counsel
2600 Bull Street
Columbia, SC 29201
ATTORNEY FOR SCDHEC

Date: 6/6/2014

KELLY D.H. LOWRY
Law Offices of Kelly D. H. Lowry, P.C.
753 E. Main St., Ste. 7
Spartanburg, SC 29302
ATTORNEY FOR SCDHEC

FOR ALBEMARLE:

Date: June 11, 2014

CHARLES R. NESTRUD
Chisenhall, Nestrud & Julian, P.A.
400 West Capitol
Suite 2840
Little Rock, AR 72201